IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.   Case No. 1:25-cr-00012-AW-MAL

ATHARVA SATHAWANE
  a/k/a "Andy Sathawane"
_____/

**RESPONSE IN OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

The government files this response in opposition to the Defendant's Renewed Motion for Judgment of Acquittal. ECF No. 70. For the reasons explained below, the government respectfully requests that the motion be denied.

As an initial matter, the government notes that throughout his motion, the defendant mischaracterizes and misapplies the correct standard of review. "In considering a Rule 29 Motion for Judgment of Acquittal, the trial court is required to determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (citations omitted). However, the defendant claims that "a special standard of review applies" because "[a]ll the evidence presented by the Government at trial was circumstantial." ECF No. 70 at 1. According to the defendant, "Not only must

1

there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence." *Id.* (citing *Gordon v. State,* 287 So. 3d 610, 615 (Fla. Dist. Ct. App. 2019); *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002)); *see also id.* at 5 ("In this case, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence.").

The defendant's reliance upon Florida state law to increase the government's burden is misplaced. Florida's special burden of proof for cases involving solely circumstantial evidence does not apply to federal cases within the Eleventh Circuit. *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 463–464, 466 (11th Cir. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 326 (1979) (rejecting the "theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt" as a matter of federal law). Moreover, even under Florida state law, the "special standard of review" would not apply here because "[t]his case was not an *entirely* circumstantial evidence case." *Gordon*, 287 So. 3d at 615 (emphasis added). At trial, the government presented numerous witnesses to establish—and the defendant himself admitted—that the defendant participated in over thirty transactions where he obtained packages of cash and gold directly from elderly victims and then transferred those packages to other individuals under admittedly suspicious circumstances.

Due to this fundamental misunderstanding of the correct standard, the defendant's motion is generally based on the flawed premise that the government did not present sufficient evidence to overcome the defendant's testimony, especially as it relates to the defendant's knowledge. Interestingly, however, the defendant's own testimony is what supports the denial of his motion. That is because "[w]hen a defendant testifies in his own defense, the jury may disbelieve his testimony, and the defendant's own statements 'may be considered as substantive evidence of the defendant's guilt.'" *United States v. Portillo*, 813 F. App'x 423, 425 (11th Cir. 2020) (quoting *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995)). Thus, "[a]t least where some corroborative evidence of guilt exists for the charged offense ... and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, *by itself*, elements of the offense." *Id.* (quoting *Brown*, 53 F.3d at 314–15) (ellipses in original) (emphasis added). "This rule applies with 'special force' when the government must prove 'highly subjective elements,' such as the defendant's intent or knowledge." *Id.* (quoting *Brown*, 53 F.3d at 315).

At trial, the defendant testified in detail about his involvement and participation in the conspiracies but repeatedly denied having knowledge that he was participating in a fraud scheme. As explained previously, "[t]he jury was entitled to disbelieve this testimony and take his denials as affirmative evidence that he had the requisite knowledge." *Id.* at 426.

3

Furthermore, there was a plethora of direct and circumstantial evidence to establish or corroborate the defendant's knowledge that he was participating in a scheme to defraud elderly victims (and, for what it's worth, to exclude the defendant's hypothesis of innocence), including: (1) the extremely shady circumstances under which the defendant obtained and transferred significant amounts of cash and gold; (2) a concerned citizen (John McConaha) confronting the defendant, calling him a "scammer," and preventing him from obtaining over $1 million of gold from another elderly victim; (3) the defendant sending and receiving YouTube videos that depicted couriers being arrested while attempting to pick up gold from elderly victims, the police officers in those videos expressly referencing the courier's participation in a "fraud" scheme, and the video titles expressly referring to the couriers as "Scammers"; (4) the defendant and his co-conspirators repeatedly expressing concerns about the police and even cancelling a "run" because the defendant "saw cops at gate"; (5) the defendant making Zelle payments to other "gold rushers" on behalf of his co-conspirators and then misrepresenting the reason for the payment in the "payment memo" section; (6) the defendant repeatedly lying about his participation in the fraud scheme while being interviewed by law enforcement; (7) the defendant acknowledging (during the same interview) that "it was suspicious after a couple ones," his handlers could not explain to him "what's

happening," and yet he continued to participate because "[i]t was good money"[1]; and (8) the defendant providing a false name to an eighty-seven-year-old victim and then, in a subsequent message with his friends, commenting on her susceptibility in a patently offensive way.

With respect to the extremely shady circumstances of the fraud scheme, the evidence at trial showed that: (a) the defendant was primarily working with individuals he supposedly did not know, who used aliases, and who kept switching names and phone numbers; (b) the defendant exclusively communicated with those individuals via an encrypted chat application; (c) the defendant was regularly instructed by his handlers to delete chat groups and messages and, in fact, did so on some occasions; (d) the defendant sometimes retained possession of the fraud proceeds for multiple days at his apartment because no one reliable was available to complete his laundering activities; (e) he did not have a true employer; (f) he transferred hundreds of thousands of dollars of cash and gold in parking lots to

---

[1] In addition to being incompatible with the evidence and the jury's verdict, the defendant's trial testimony was also inconsistent with his initial interview and his sworn statement to the Court at the August 12, 2025 change-of-plea (COP) hearing. While under oath at the COP hearing, the defendant told the Court that he did not even *suspect* that he was involved in a fraud scheme. Then, at trial, the defendant testified that he suspected fraud on *multiple* occasions, but, each time, he was reassured by his co-conspirators that nothing fraudulent was occurring.

unknown individuals, sometimes at night, with no paperwork[2]; (g) he was told to choose "[l]ess concpicuous" [sic] locations for the laundering activities; (h) he travelled to other states without any confirmed jobs, sometimes for multiple days; (i) he was often paid with a portion of the fraud proceeds and always preferred cash; and (j) by his own admission, he could make the same amount of money that he "would make doing like three weeks of work at minimum wage" in only four hours and actually profited $33,840 in approximately four months.

    When the correct standard of review is applied, most of this evidence *alone* was sufficient for the jury to find the defendant guilty. *See United States v. Feldman*, 931 F.3d 1245, 1258 (11th Cir. 2019) ("In considering the sufficiency of the evidence, our only task is to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). But when this evidence is taken together and combined with the defendant's testimony that the jury obviously disbelieved, the defendant's motion is completely doomed.

---

[2] The defendant testified that he thought he was delivering the fraud proceeds to jewelers. Of the thirty-one transactions that the defendant completed, only two of those (transaction numbers 5 and 27) involved a jewelry store. *See* Trial Exhibit 56; *see also* ECF No. 70 at 5 ("Evidence at trial showed Defendant delivered packages to a brick-and-mortar jewelry store at least twice.").

6

The defendant inexplicably fails to acknowledge much of this evidence in his motion. And for the few categories of evidence that the defendant does recognize—such as the confrontation with Mr. McConaha, the YouTube videos, and the suspicious circumstances under which the defendant picked up and delivered packages—the defendant flips the standard on its head, offering his own self-serving interpretation of how the evidence should be construed. *See* ECF No. 70 at 3–5. The defendant then claims that each category of evidence—when viewed in isolation—is insufficient to establish that the defendant knew the purpose or nature of "*this* conspiracy" and agreed to join it. *See id.* The defendant further claims that "the government presented no evidence of an *express* agreement between the co-conspirators and Defendant to launder illegal proceeds or to commit wire fraud." *Id.* at 3 (emphasis added).

The defendant again misunderstands the applicable burden. The government is never required to prove an "express agreement" to join a conspiracy. Indeed, "[t]he very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme, and the government can show that a defendant voluntarily joined a conspiracy through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *United States v. Ahrens*, 782 F. App'x 845, 847 (11th Cir. 2019); *see also United*

7

*States v. LaFontante*, 417 F. App'x 854, 858 (11th Cir. 2011) ("The defendant's knowing participation [in a conspiracy] may be proven by direct or circumstantial evidence. Such circumstantial evidence includes 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" (quoting *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005)).

Here, the government alleged that "[i]t was the object of the conspiracy for **ATHARVA SATHAWANE** and his co-conspirators to defraud elderly victims throughout the United States … into providing money and gold to the conspirators." ECF No. 1 at 2. When the Court draws all reasonable inferences and credibility choices in favor of the jury's verdict, the direct and circumstantial evidence discussed above was more than sufficient for the jury to find that the defendant had a general understanding of the unlawful purpose of the plans to commit wire fraud and money laundering and willfully joined in the plans on at least one occasion. *See Ahrens*, 782 F. App'x at 848 (finding that "the suspicious structure of the scheme demonstrated [the defendant's] knowledge"); *United States v. Reeves*, 742 F.3d 487, 500 (11th Cir. 2014) (stating that "efforts to conceal a conspiracy may support the inference that a defendant knew of the conspiracy and joined it while it was in operation"); *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) ("Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud."); *United States v.*

*Alejandro*, 118 F.3d 1518, 1521 (11th Cir. 1997) ("The jury could also properly consider appellant's false exculpatory statements upon his arrest as substantive evidence of his guilty intent."). At a minimum, the evidence was sufficient to support a finding that the defendant "had every reason to know but deliberately closed his eyes." ECF No. 61 at 7. Accordingly, the government respectfully requests that the defendant's Renewed Motion for Judgment of Acquittal (ECF No. 70) be denied.

October 27, 2025

Respectfully submitted,

JOHN P. HEEKIN
United States Attorney

_____
Adam Hapner
Assistant United States Attorney
Florida Bar No. 112006
401 SE First Ave, Ste 211
Gainesville, Florida 32601
(352) 378-0996
Adam.Hapner@usdoj.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I hereby certify, pursuant to N.D. Fla. Loc. R. 7.1(f), that this filing complies with the word limit and contains 2,090 words.

_____
Adam Hapner
Assistant United States Attorney